IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Ahmer Shaikh, )
    Petitioner, )
)
v. ) 1:08cv1286 (JCC/TRJ)
)
Gene M. Johnson, )
    Respondent. )

FILED MAY 20 2010 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Ahmer Shaikh, a Virginia inmate proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of second degree murder entered on a jury verdict in the Circuit Court of Fairfax County, Virginia. Respondent has filed a Motion to Dismiss and Rule 5 Answer, with a supporting brief and exhibits, and Shaikh has filed a reply. For the reasons that follow, Shaikh's claims must be dismissed.

### I. Background

Beginning on May 27, 2003 and continuing for four days, Shaikh was tried to a jury on a charge of first degree murder in the death of Mohammad Zahid Ali. The underlying facts were described by the Virginia Supreme Court as follow:

> Ahmer Shaikh (Ahmer), the petitioner, lived in an apartment in Fairfax County with his father, Altaf Shaikh, his sister, Humaira, his younger brother, Furqan Altaf, and Humaira's husband, Faisal Rehman, as well as two younger sisters. Humaira had been having an adulterous affair with another man, Zahid Ali (Zahid). The affair eventually became known to the family, all of whom expressed their angry disapproval. On September 9, 2002, Zahid went to the family's apartment to discuss the situation with Humaira's father. A commotion ensued. Ahmer was not present, but his younger brother called him on his cellular telephone and he arrived soon thereafter. Family members had to restrain Ahmer from attacking Zahid. Rehman then came into the room with a kitchen knife and stabbed

> Zahid repeatedly. Ahmer broke free from his relatives and joined in the attack, hitting Zahid on the head with a stick. Humaira tried to cover Zahid's head wounds with a scarf as Ahmer and Rehman continued to attack him. Zahid dove off a second-story balcony to escape his attackers, falling to a concrete patio below. Ahmer picked up the knife, threw it into a pot of water, and called 911, giving a false report that an unknown intruder 'came to my house [t]o attack us ... with a knife.' Zahid died later that night of multiple stab wounds to the head, neck and upper body.

Shaikh v. Johnson, 276 Va. 537, 540, 666 S.E.2d 325, 326 (2008). On May 30, 2003, the jury convicted Shaikh of second degree murder, and he subsequently was sentenced to serve twenty (20) years in prison.

Shaikh prosecuted a direct appeal, raising the following claims:

1. Virginia law disqualifies a venire member from serving on a jury if he or she has been convicted of a felony or exhibits bias or prejudice against a party. Where the court determined that venire member Steve Mastric had a hearing scheduled on a misdemeanor charge of possession of marijuana, did the trial court err in excusing Mr. Mastric for cause?

2. Virginia law requires that, in order to serve on a jury, a venire member must have a sufficient understanding of English to participate fully in the jury deliberations. Where venire member Ahmad Sian explained that [he] successfully worked as a loan adjustor and understood 'ninety percent' of the proceedings, did the trial court err in excusing Mr. Siam for cause?

3. Virginia law provides that an accessory is liable for crimes committed in the course of action that has been planned, arranged, adjusted, agreed upon, and settled between parties acting together according to some design or scheme. Where Instruction 8 imposed liability for concert of action without defining concert of action, did the trial court err in refusing to provide proposed Instruction R or the proposed compromise instruction?

Resp. Ex. A, Opening Brief of Appellant at 3. On January 25, 2005, a divided Virginia Court of Appeals affirmed Shaikh's conviction. As to the third claim listed above, which is the sole claim relevant here, the majority held that "Shaikh's failure to ensure that the record includes the texts of Instruction R or the 'compromise' instruction precludes us from evaluating his claim that the trial court erred by refusing them." Shaikh v. Commonwealth, R. No. 2614-03-4 (Va. Ct. App. Jan 25, 2005), slip op. at 5. The court rejected Shaikh's contention that the trial court had a sua sponte obligation to issue its own definitional instruction on concert of action, because the model instruction which the jury received "has been discussed many times by Virginia courts, without any hint of criticism as being ill defined or beyond the comprehension of ordinary jurors." Id. The dissent disagreed on these points, reasoning that Shaikh should not be penalized for the failure of the trial judge or clerk to place the proposed special instructions in the file after they were tendered to the court, id. at 9, and concluded that the court's failure to define concert of action and to distinguish it from simultaneous action for the jury was not harmless error. Id. at 9 - 10.

Thereafter, Shaikh filed a petition for further appeal to the Supreme Court of Virginia. On August 22, 2005, the Court refused the appeal. Shaikh v. Commonwealth, R. No. 050743 (Aug. 22, 2005). Resp. Ex. B.

Shaikh, through counsel, next petitioned the Circuit Court of Fairfax County for a state writ of habeas corpus, arguing that:

> 1. His rights to due process and effective assistance were violated when his attorney failed to ensure that the original and "compromise" versions of Refused Instruction R were made part of the record, thereby preserving the issue for appeal.
>
> 2. His rights to due process and effective assistance were

3

> violated when his attorney failed to call Faisal
> Rehman to testify at Shaikh's trial.

Shaikh v. Johnson, Case No. CL-2006-10620. Respondent moved to dismiss the petition, and Shaikh filed a reply. The court heard oral argument on July 12, 2007, and ruled at the conclusion of the proceeding that Shaikh was not entitled to habeas corpus relief. An order incorporating the court's findings was entered later that day. The Virginia Supreme Court granted an appeal, and following briefing and oral argument, the circuit court's decision was affirmed in a published opinion which will be discussed in greater detail below. Shaikh, 666 S.E.2d at 325.

Shaikh then turned to the federal forum, and timely filed this § 2254 application on December 11, 2008, reiterating the same claims he raised in his Virginia habeas corpus proceeding. On September 14, 2009, respondent filed a Motion to Dismiss with a supporting brief and exhibits, and Shaikh subsequently filed a reply. It is uncontested that Shaikh has exhausted both of his present claims as required under 28 U.S.C. § 2254,[1] so this matter is now ripe for review on the merits.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, the federal court may not grant the petition based on the claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an

---

[1]Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

unreasonable determination of the facts. 28 U.S.C. § 2254(d); Knowles v. Mirzayance, 556 U.S. __, 129 S. Ct. 1411, 1418 (2009). This provision dictates a "highly deferential standard for evaluating state court rulings ... which demands that state court decision be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (citation omitted). Moreover, "[t]he required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir.), cert. denied, 548 U.S. 928 (2006); see also, Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (federal court must presume a state court's determination of a factual issue is correct unless it is rebutted by clear and convincing evidence). Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

Evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted only if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one, so an unreasonable application of federal law is different from an incorrect application

of federal law. Id. at 410. "Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Even a federal court's perception of clear error in a state court decision does not warrant habeas corpus relief under § 2254(d): "The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003); see also, Yarborough v. Johnson, 520 F.3d 328, 336 (4th Cir.), cert. denied, 128 S.Ct. 2993 (2008) (determination of whether state court decision was unreasonable involves a "substantially higher threshold" than determining whether decision was correct).

### III. Analysis

In both of his claims before this Court, petitioner argues that his right to effective assistance of counsel was compromised. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Yarborough v. Gentry, 540 U.S. 1, 5 - 6 (2003) (noting that judicial review of an ineffective assistance claim is "doubly deferential" under the § 2254(d) standard); Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's]

6

performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

### Claim A

In his first claim, Shaikh argues that his attorney rendered ineffective assistance by failing to ensure that the original and "compromise" versions of the jury instruction on concert of action were included in the record, thereby failing to preserve for appellate review the issue of the court's refusal to give those instructions. The circumstances which gave rise to this claim were explained by the Court of Appeals on direct review:

> Prior to the commencement of the defense case in chief, the trial

7

judge asked counsel if they had agreed on a final set of jury instructions. They advised the court that they had agreed on all but one, the instruction on 'concert of action.' The Commonwealth proposed the model jury instruction, which stated:

> The court instructs the jury that if there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

1 Virginia Model Jury Instructions, Criminal, No. 3.160, at 1-75 (1998).

Shaikh claimed the model instruction was accurate, but incomplete. He proposed that the court use Instruction R, which relied upon specific definitions of the concert of action concept used in Virginia appellate opinions. The prosecutor objected to Instruction R because 'it leaves out some relevant language ... some pretty important things too, and that's the problem with this.' 'If we are going to start putting in the language,' the prosecutor added, 'I guess we've got to put in all of it.'

The trial court record, however, does not include Instruction R. The only mention of its text appears in counsel's oral argument: "And you can see the words there, 'Concert of action is an action that's been planned, arranged, adjusted, agreed on or settled between the parties acting together ...' *etcetera*." The remainder of the Instruction R, the *etcetera* portion, does not appear in the record.

The trial judge rejected Instruction R, noting that 'in case after case, the appellate courts have cautioned against pulling language out of particular cases.' The judge also found Instruction R was itself incomplete given the absence of the caveat noted by the prosecutor. After the court ruled, Shaikh's counsel asked to be reheard on the subject. In response, the prosecutor said he would withdraw his objection to Instruction R if he and Shaikh could agree on including additional language addressing his caveat. The trial judge agreed, in principle, to give the proposed instruction with an agreed-upon edit. Later, when counsel could not agree with the final text of the proposed instruction, the trial judge directed counsel to provide him

> with case authorities in support of their respective positions.
>
> After the close of all the evidence, the court again heard arguments concerning the concert of action issue. Shaikh's counsel requested that the court issue a 'compromise' version of Instruction R, arguing that it had been rewritten to balance both sides' views of the definitional limits of the concert of action concept. The prosecutor objected because Shaikh's counsel 'culled' from appellate court opinions language that might 'mislead this jury to think that there has to be some level of concrete agreement or settling - and I don't even know what settling is supposed to mean really - that is not required.' The trial court rejected the 'compromise' version of Instruction R. Like the original proposal, the 'compromise' version nowhere appears in the trial court record.
>
> After the jurors retired to deliberate, they passed to the court a written question asking whether the concert of action instruction should be read in conjunction with the instruction defining a principal in the second degree. At the suggestion of Shaikh's counsel, the court advised the jury to follow the instructions as written.

Shaikh, R. No. 2614-03-4, slip op. at 3.

As discussed above, when Shaikh in his state habeas corpus proceeding raised the same claim he makes here - that his counsel provided ineffective assistance by failing to ensure that the rejected jury instruction became part of the trial record - relief was denied by the Circuit Court of Fairfax County. Shaikh appealed that decision to the Virginia Supreme Court. After discussing <u>Strickland</u> and its progeny, <u>Shaikh</u>, 666 S.E.2d at 328, the Court affirmed the denial of Shaikh's ineffective assistance claim on the following holding:

> In ruling on the respondent's motion to dismiss Ahmer's habeas petition,[2] the circuit court held that trial counsel was entitled to rely on the court's statement at trial that Instruction R was a part of the record, and that petitioner had not established deficient performance on counsel's part that would satisfy the first part of the *Strickland* test.

---

[2] The Virginia Supreme Court in its opinion referred to the instant petitioner as "Ahmer."

9

\* \* \*

The question whether counsel's performance fell below the standard with respect to Instruction R is subject to the subsidiary question whether, as the circuit court found, counsel was entitled to rely on the court's statement at trial that Instruction R was a part of the record. The question is further complicated by the rapid succession of three attorneys who assumed responsibility for the defense during the crucial period between the sentencing and appeal, when the record was being assembled in the clerk's office.

Ahmer's arguments are correct as abstract statements of the law. Applying them to the peculiar circumstances of this case, however, brings us to consideration of the Supreme Court's observation in *Strickland*:

> The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*466 U.S. at 697.*

That admonition is particularly appropriate to the present case. However complex the question of counsel's performance may have been in the circumstances, Ahmer's failure to establish the prejudice prong of the *Strickland* test is clear. The jury was fully and fairly instructed. All instructions except that relating to 'concert of action' were agreed upon by the parties. We agree with the majority opinion of the Court of Appeals in its holding that the trial court's use of the model jury instruction had left no vital issue unaddressed.

Ahmer argues that the essential content of Instruction R can be determined from its apparent quotation by counsel in oral argument. Assuming that to be true, we think its language would have been more confusing than enlightening. The terms 'planned, arranged, adjusted, agreed on or settled' are stated in the disjunctive, so as to give the jury the apparent choice of any single one of them as the definition of 'concert of action.' There is no limitation of the time

during which those actions must have occurred in order to be significant. Ahmer asserts that the terms he advocates were taken from the explanatory language contained in an appellate decision. We have frequently cautioned against 'the danger of the indiscriminate use of language from appellate opinions in a jury instruction.' ... Appellate language used to explain a ruling or illustrate a point must necessarily be tailored to the facts and circumstances of the case then before the court on appeal. Unless clearly intended for use as a jury instruction, such language is inappropriate for that purpose. ...

The burden is on the proponent of a jury instruction to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language. If Instruction R was phrased as Ahmer contends, his trial counsel could not have met that burden. Consequently, the trial court did not err in refusing the proposed instruction and its refusal would have been unavailing as a ground for reversal even if it had been contained in the record on appeal.

Accordingly, we conclude that Ahmer suffered no prejudice because of the omission of Instruction R from the record and we do not reach the 'performance' prong of *Strickland* in deciding Ahmer's assignments of error concerning Instruction R.

Shaikh, 666 S.E.2d at 329, citations omitted.

On this record, it is apparent that the rejection of Shaikh's first claim by the Virginia courts was neither contrary to the applicable federal authority upon which those courts expressly relied, see Strickland, supra, nor was it based on an unreasonable determination of the facts. As the Virginia Supreme Court found, "[t]he jury was fully and fairly instructed" when it received the Virginia Model Jury Instruction on concert of action, which "left no vital issue unaddressed." Accordingly, counsel's failure to ensure that the rejected Instruction R was made part of the trial record caused Shaikh to suffer no prejudice because, as the Court noted, "the trial court did not err in refusing the proposed instruction and its refusal would have been unavailing as a ground for reversal even if it had been contained in the record on appeal." Shaikh, 666 S.E.2d at 329. Under these circumstances,

petitioner is not entitled to habeas corpus relief on his first claim, and the claim consequently will be dismissed.

## Claim B

In his second claim, Shaikh argues that his counsel rendered ineffective assistance by failing to call Faisal Rehman as a witness as Shaikh's trial. The Virginia Supreme Court found this claim to be without merit for the following reasons:

> All but one of the eyewitnesses to the events of September 9, 2002 were members of Ahmer's family. They gave wildly varying accounts of those events in their initial statements to the police, in subsequent interviews with the police, in recorded statements, as witnesses in the separate trials of Rehman and Ahmer, and n the sentencing proceedings thereafter. Because of these discrepancies, most were impeached by their prior inconsistent statements.
>
> Rehman was no exception. He initially told the police, on the night of the murder, that when he entered the apartment, he found Ahmer engaged in a fight with Zahid, the victim, and that he tried to intervene by grabbing he victim's hand and trying to pull him off Ahmer, after which the victim pulled away and jumped off the balcony to escape. Later that night, Rehman changed his story and told the police that he was angry about the affair between Zahid and Humaira, that he entered the apartment, found Zahid in conversation Humaira's father and struck Zahid with his fist. Rehman further stated that Ahmer joined in the fight and both of them started punching Zahid, after which Rehman went to the kitchen, picked up a knife, returned, and stabbed Zahid several times. At the guilt phase of Rehman's trial, he testified that after he stabbed Zahid, someone else pulled him away and he saw the door open, whereupon Ahmer came in and started hitting Zahid after Rehman had finished. At the penalty phase of Rehman's trial, he testified that the fight was entirely between himself and Zahid, and that Ahmer 'just tried to stop us.' By the time of Rehman's sentencing hearing, however, Ahmer had been tried and convicted. At that point, Rehman's counsel argued to the court, 'Ahmer Shaikh was the leader of this family[.] Ahmer Shaikh was the one that wanted something to happen to [Zahid] ... Your Honor, the jury in [Ahmer's] case ... recognized Ahmer Shaikh as the leader or this, recognized him for the thug that he is.'

As stated above, Ahmer's counsel interviewed both Rehman and his counsel before Ahmer's trial began. Ahmer's counsel furnished an affidavit which was part of the record in the habeas proceeding. In it, he stated that Rehman 'was hasty to offer to testify in whatever way might be beneficial to [Ahmer] and his family' but when asked about the events that led up to Ahmer's arrival at the crime scene, Rehman did not want to talk about them. Rehman's counsel, however, informed Ahmer's counsel that Rehman would not testify at Ahmer's trial, and, if subpoenaed, would invoke his *Fifth Amendment* privilege.

At Ahmer's sentencing hearing, Ahmer's counsel informed the court that he had experienced great difficulty in dealing with the family members. He referred to his efforts in gathering the facts from then as akin to an 'archeological dig.' The trial court responded: 'Well, I really felt at trial that you were having a very difficult time because of the testimony of the family ... every witness that got on the stand blew up something.' In the habeas proceeding, the court recalled that at trial, the witnesses were '[a]ll over the place.'

In these circumstances, trial counsel's decision not to call Rehman as a witness may well be characterized as a sound tactical decision. Counsel could have no assurance what Rehman's testimony might be, but helpful or harmful, counsel could rest assured that it would be subject to devastating impeachment. Rehman might have given testimony favorable to Ahmer, but in that case the jury would have heard impeachment evidence equally or more damaging. In view of his prior statements, Rehman might also have proved directly hostile. Further, counsel could have no assurance that Rehman would testify at all. If he refused to testify, the effect of his invocation of the *Fifth Amendment*, if the jury were aware of it, would be unpredictable. Rehman's testimony would have "represented a 'two-edged sword' that counsel often confront when constructing the strategy most likely to assist rather than harm a client.' *Lenz v. Warden of the Sussex I State Prison*, 267 Va. 318, 337, 593 S.E.2d 292, 303 (2004).

A habeas petitioner making a claim of ineffective assistance must overcome a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, ... the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' *Strickland, 466 U.S. at 689* (internal quotation marks omitted). Ahmer has failed to overcome that presumption here. We hold that counsel's decision not to call

Rehman as a witness fell within the range of reasonable professional assistance. We therefore do not reach consideration of the 'prejudice' prong of *Strickland* in deciding Ahmer's assignments of error concerning counsel's decision not to call Rehman as a witness.

Shaikh, 666 S.E.2d at 329 - 32.

It is well established in federal jurisprudence that "'strategic choices made [by counsel] after thorough investigation ... are virtually unchallengeable....'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. In particular, decisions concerning the calling of witnesses are matters of strategy left to the attorney, and ordinarily cannot constitute ineffective assistance. Jones v. North Carolina, 547 F.2d 808 (4th Cir. 1977). In this case, the Virginia Supreme Court's characterization of counsel's decision not to call Faisal Rehman to testify at petitioner's trial as a sound tactical choice is in accord with these authorities. The Virginia court's observation that "counsel could rest assured that [any testimony by Rehman] would be subject to devastating impeachment" is amply supported by the record, as indeed, during the investigation of the crime and throughout his own prosecution and sentencing, Rehman never gave the same account of the crime twice. Resp. App. 6 - 7, 12 - 13, 132 - 33; Supp. App. 13, 16 - 17, 19, 29 - 31, 35 - 40.[3]

In an apparent attempt to bolster this claim, petitioner has provided a statement made under

---

[3] For instance, Rehman initially told police that it was Shaikh who fought with the decedent while Rehman tried to stop the quarrel. (Resp App. 6-7). At the guilt phase of his own trial, Rehman admitted that he stabbed the victim twice with a knife, and said after he had finished Shaikh also started hitting Zahid. (Resp. Supp. App. 13) By the time of the penalty phase, Rehman was willing to place all blame for the victim's death on himself, and stated that Shaikh "just tried to stop us." (Resp. App. 132) Other family members who were present in the apartment at the time of the incident gave similarly contradictory versions of events, to the point that the trial court observed to Shaikh's counsel at sentencing that "you were having a very difficult time because of the testimony of the family" (Resp. App. at 460), and that "every witness that got on the stand blew up something." (Resp. App. at 466).

penalty of perjury by Rehman on August 3, 2006. In it, Rehman asserts that he met with Shaikh's counsel prior to Shaikh's trial and told counsel that he would testify on Shaikh's behalf that he stabbed Zahid, that nothing was discussed or planned with Shaikh, and that Shaikh did not encourage or assist him in any way. Resp. Ex. B. Putting aside any considerations as to the procedural propriety of considering this statement, and taking it as true, it falls far short of calling into question counsel's decision not to use Rehman as a witness. Even if Rehman would have testified exactly as stated in the affidavit, his former contradictory versions of the salient events still would have been available for impeachment, making Rehman's testimony the "two-edged sword" predicted by the Virginia Supreme Court. Shaikh, 666 S.E.2d at 331. Because counsel's decision not to call Rehman as a witness thus was a tactical decision that cannot support habeas corpus relief, Goodson v. United States, 564 F.2d 1071 (4th Cir. 1977), the state courts' rejection of Shaikh's second claim was neither contrary to nor an unreasonable application of the controlling federal law upon which it expressly relied, Strickland, supra, nor was it based on an unreasonable determination of the facts. Therefore, that same result must be reached here. Williams, 529 U.S. at 412-13.[4]

Lastly, it is noted that the petition under consideration contains a request for a federal evidentiary hearing. Pet. at 25 -26. As petitioner's claims can be thoroughly addressed on the

---

[4]The Court notes that petitioner's counsel in this federal proceeding avers that, "in anticipation of filing this habeas petition," counsel spoke to five jurors from Shaikh's trial, and claims that three opined that had Rehman credibly testified that he acted independently in assaulting the victim, it could have made a difference in their verdicts. Pet. at 22-23. The Court does not credit this assertion for two reasons. First, as counsel should be aware, such hearsay statements offered in a unsworn pleading are inadmissable. Second, and more specifically pertinent in this § 2254 habeas action, it is apparent that the jurors' ostensible comments to counsel have not previously been presented to the Virginia courts, so that aspect of Shaikh's second claim remains unexhausted. It thus would not be cognizable in this proceeding even had it been presented in a procedurally appropriate manner. Duncan, 513 U.S. at 364 (exhaustion of both factual and legal claims required for federal review).

existing record, and because he otherwise is not entitled to evidentiary development of his claims, petitioner's request for an evidentiary hearing is without merit. Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006); Green v. Johnson, 431 F. Supp.2d 601, 608-17 (E.D. Va. 2006).

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted, and this petition will be dismissed. An appropriate Order shall issue.

Entered this 20th day of May 2010.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge